Belknap
No. 78-007

## THE STATE OF NEW HAMPSHIRE

### v.

## NICHOLAS THEODORE

September 18, 1978

*Thomas D. Rath*, attorney general (*Richard B. McNamara*, assistant attorney general, by brief), for the State.

*Harvey Brower*, of Lawrence, Massachusetts, by brief for the defendant.

BOIS, J. This is an appeal from a conviction on two counts of conspiracy to commit arson of a dwelling in Belmont, New Hampshire. Before trial, the defendant's attorney moved to withdraw as court-appointed counsel on the ground that his prior representation

of a prosecution witness created a conflict of interest. The motion was denied. The defendant seasonably excepted to this and other rulings by the trial court. *Keller*, C.J., reserved and transferred the questions of law raised by the defendant's exceptions. We affirm.

The day before trial, defense counsel, David KillKelley, Esq., petitioned the court to allow him to withdraw as court-appointed counsel. He argued that he had previously represented John Fedorchuk in a prosecution arising out of the same facts as those alleged in the instant case, that Fedorchuk was to be called as a principal witness for the State to testify against the defendant, and that Attorney KillKelley's "dual representation" amounted to a clear conflict of interest. The court rejected the argument and did not permit KillKelley to withdraw.

■ The sixth amendment guarantee of effective assistance of counsel mandates that the courts be sensitive to possible conflicts of interest that could impair an attorney's ability to vigorously defend his client's interests. *See Holloway v. Arkansas*, 435 U.S. 475 (1978); *Rolon Marxuach v. United States*, 398 F.2d 548, 552 (1st Cir. 1968), *cert. denied*, 393 U.S. 982 (1968). *See generally* Note, *Conflict of Interests in Criminal Proceedings*, 23 Ark. L. Rev. 250 (1969). Requiring an attorney to represent two codefendants whose interests are in conflict has long been held to constitute error of constitutional magnitude. *See, e.g., Glasser v. United States*, 315 U.S. 60 (1942). Although joint representation does not per se violate federal constitutional guarantees, a conviction must be reversed whenever there is more than a remote possibility that a criminal defendant was prejudiced by his attorney's simultaneous representation of another defendant. *See Holloway v. Arkansas supra.*

■ There is a difference, however, between a case involving joint representation, in which an attorney represents two or more codefendants, and a case involving prior representation, in which an attorney has had a professional relationship with a witness or another party in the past. *See United States v. DiCarlo*, No. 78-1026 (1st Cir., April 20, 1978). In the latter case, the possibility of a conflict is weaker. Accordingly, "a real conflict of interest or a specific instance of prejudice must be shown" before a conviction will be reversed in cases of prior representation. *Id.*, slip op. at 8; *accord, United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066 (1976); *see* Annot., 27 A.L.R.3d 1431, § 4 (1969 & Supp. 1977) (collecting cases).

█ The record indicates that although defense counsel had in the past represented prosecution witness Fedorchuk in a proceeding arising out of the same facts as those alleged in this case, the witness had been convicted and had already served his prison sentence before the instant trial began. There is no evidence that Attorney KillKelley was inhibited in conducting his client's defense by any reluctance to divulge or employ confidential communications with his former client; when informed that KillKelley might represent the defendant, Fedorchuk indicated that he had "no objection." There is no showing of actual prejudice, and KillKelley appears to have vigorously cross-examined the witness. We therefore reject the argument that defense counsel's prior representation of a prosecution witness denied the defendant the right to effective assistance of counsel.

The defendant next argues that the State did not meet its burden of proving the essential elements of the crime charged, and that therefore the court erred in denying the defendant's motions for dismissal and for a directed verdict. He asserts that "[a]ll of the evidence introduced in the course of the trial failed completely to establish that any agreement [to commit arson] was entered into on either of the dates" specified in the indictments, August 12 and August 15, 1974. He also claims that the record does not support either a finding that the property allegedly the subject of the conspiracy was the "property of another" as defined in RSA ch. 634, the arson statute, or a finding that the alleged fire was "of an incendiary origin."

█ █ Motions for a directed verdict of acquittal and dismissal of an indictment may be granted only when the evidence and all reasonable inferences therefrom construed most favorably to the State would not permit a jury to find guilt beyond a reasonable doubt. *See State v. Perron*, 118 N.H. 245, 385 A.2d 225 (1978). A verdict will not be reversed merely because the evidence supporting it was circumstantial. *Id.; State v. Collins*, 117 N.H. 198, 371 A.2d 1154 (1977). Especially is this so when the crime alleged is conspiracy. The "very essence [of conspiracy] is 'secrecy and concealment' (*Blumenthal v. United States*, 332 U.S. 539, 557 (1947). . . . Since direct evidence of a conspiracy is often difficult to obtain, the existence of a conspiracy frequently must be proved, if at all, by attendant circumstances." *State v. Gilbert*, 115 N.H. 665, 667, 348 A.2d 713, 715 (1975).

█ █ The record discloses ample evidence to support the verdict in this case. There was testimony, for example, that one of the

defendant's employees assisted in an attempt to burn down the Belmont house on August 15, 1974. There was also evidence from which the jury could infer that the employee was doing so under an agreement with the defendant. The alleged August 12 agreement could also be inferred from the evidence. That the conspirators might not have entered into agreements on the dates listed in the indictment does not necessitate reversal; this is not a case in which time is of the essence of the offense charged. *See State v. Spade*, 118 N.H. 186, 385 A.2d 115 (1978); RSA 601:8.

▆▆ ▆▆ Assuming without deciding that the State properly was required to prove that the Belmont dwelling was the "property of another," we hold that the jury could have found that the State did so prove. A person is guilty of the offense of arson "if he knowingly starts a fire or causes an explosion which unlawfully damages the property of another." RSA 634:1 I. "Property of another" as used in RSA ch. 634 is defined in RSA 637:2 IV to include "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property. . . ." It was uncontradicted that the defendant was the assignee of Robert Santis' interest in a purchase-and-sale agreement that Santis had entered into with Peter DeJaeger, the owner of the Belmont property. Title to the property remained in DeJaeger and was not to pass to the defendant unless and until he paid DeJaeger for the property. The property in question thus was the "property of another" as the phrase is used in RSA ch. 634. In addition, even if the property were solely the property of the defendant, there was evidence to support a finding, as the indictment charged, that the defendant conspired to set fire to the property in order to collect the insurance on it. Under RSA 634:1 III(a), a person is guilty of arson if "the property is . . . the actor's property, and the fire was started or the explosion caused for the purpose of collecting insurance on such property. . . ."

We also hold that the record contains more than sufficient evidence to justify a finding that the August 12, 1974, partial burning of the house was incendiary.

The defendant's final argument is that the trial court erred in denying his request that RSA 625:10 be read verbatim in the charge to the jury. The instructions that the court did give to the jury, according to the defendant, inaccurately stated New Hampshire law regarding the burden of proof.

RSA 625:10 provides:

No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed.

The trial court's failure to incorporate into the instructions the specific language proposed by the defendant was not erroneous. *See State v. Colby*, 116 N.H. 790, 368 A.2d 587 (1976); *State v. Mannion*, 82 N.H. 518, 136 A. 358 (1927). The instructions given by the court correctly and adequately conveyed the concepts of reasonable doubt and presumption of innocence to the jury. *See Taylor v. Kentucky*, 98 S. Ct. 1930 (1978). In its detailed charge, the court several times referred to "reasonable doubt," stating the substance if not the exact wording of RSA 625:10. *See State v. Booton*, 114 N.H. 750, 762, 329 A.2d 376, 385 (1974), *cert. denied*, 421 U.S. 919 (1975); *State v. Hutton*, 108 N.H. 279, 235 A.2d 117 (1967).

*Exceptions overruled.*

BROCK, J. did not participate in the decision of this case; the others concurred.