Merrimack
No. 83-090

### ARTHUR R. ABBOTT

v.

### WILLIAM POTTER, SUPERINTENDENT, MERRIMACK COUNTY HOUSE OF CORRECTION

July 26, 1984

*Gregory H. Smith*, attorney general (*Andrew L. Isaac*, assistant attorney general, on the brief and orally), for the State.

*Diversified Legal Services P.A.*, of Concord (*Mark Rufo* on the brief and orally), for the plaintiff.

BATCHELDER, J.   The plaintiff, Arthur Abbott, appeals from the Superior Court's (*Cann*, J.) denial of his petition for a writ of habeas corpus. *See* RSA ch. 534; *Martineau v. Helgemoe*, 117 N.H. 1017, 381 A.2d 31 (1977); *LaBelle v. Hancock*, 99 N.H. 254, 108 A.2d 545 (1954). In his petition, the plaintiff alleges that his trial counsel had a conflict of interest in representing, in criminal proceedings arising out of the same or a related incident, both the plaintiff and another client, a juvenile. He asserts that, as a result of this conflict, he was deprived of his right to the effective assistance of counsel, as guaranteed by the sixth and fourteenth amendments to the United States Constitution and by part I, articles 12 and 15 of the New Hampshire Constitution. For the reasons which follow, we affirm.

The plaintiff retained Attorney John C. Boeckler to represent him, his son, Christopher Abbott, and his stepson, John Burrows, in

connection with charges stemming from incidents which occurred during the evening of April 19, 1982, in Concord. The plaintiff also agreed to pay all legal fees associated with Attorney Boeckler's representation.

The plaintiff and Christopher Abbott were both charged with felonious assault, *see* RSA 631:2 (Supp. 1983), and were tried jointly in the superior court. The jury convicted them of the lesser-included offense of simple assault. *See* RSA 631:2-a (Supp. 1983). John Burrows, a juvenile at the time of the incidents, faced juvenile proceedings in the Concord District Court.

At trial on the underlying indictments, the State offered the testimony of the victim, who stated that he was assaulted by the plaintiff and his son, Christopher Abbott. During the defendants' case, Christopher Abbott testified that he acted in self-defense and in defense of Burrows, when he fought with the victim. He also testified that Arthur Abbott, the plaintiff herein, was not in the victim's apartment and had never struck the victim. Arthur Abbott did not take the stand, and Burrows was never called by the defense to corroborate Christopher Abbott's version of the incident.

The plaintiff's claim to ineffective assistance of counsel rests on this failure to call Burrows to testify. The plaintiff claims that Attorney Boeckler decided not to call Burrows to the stand because of the clash of interests between two of his clients that would result from Burrows' anticipated testimony; that is, any testimony given by Burrows that was favorable to the plaintiff could very well have incriminated Burrows, himself.

We have held that our State Constitution is to be read to guarantee, as a fundamental right, the effective assistance of counsel. N.H. CONST. pt. I, art's. 12 and 15; *Smith v. State*, 118 N.H. 764, 770, 394 A.2d 834, 839 (1978). Our constitution does not forbid multiple representation, but caution should be exercised by counsel before he or she decides to represent more than one criminal defendant in connection with related charges. *See* ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 4-3.5(b) (2d ed. 1980) ("The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several codefendants except in unusual situations. . . .").

In a case involving allegations of ineffective assistance due to multiple representation by trial counsel, the United States Supreme Court declared:

> "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual

conflict of interest adversely affected his lawyer's perform-ance."

*Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50; *see Brien v. United States,* 695 F.2d 10 (1st Cir. 1982).

In *State v. Theodore,* 118 N.H. 548, 550, 392 A.2d 122, 123 (1978), we applied federal case law that preceded *Cuyler v. Sullivan* in a case involving allegations of a conflict of interest resulting from defense counsel's *prior representation* of a prosecution witness. We now hold that the test announced in *Cuyler v. Sullivan* to measure the effective assistance of counsel, as against claims of conflict of interest, in the context of *multiple representation* will be used for purposes of our State Constitution.

The superior court, citing *Cuyler v. Sullivan supra,* dismissed the plaintiff's petition, stating that the plaintiff had made "no showing of actual or potential conflict or prejudice."

The plaintiff asserts that the court erred in finding that there was no actual or potential conflict. The plaintiff's argument rests on the testimony of John Burrows presented at the hearing on the plaintiff's petition. Burrows testified that he expected to testify in the underlying trial, that he was willing to come to court and speak on behalf of the plaintiff, and that he was surprised at not being called to testify by Attorney Boeckler. When he was asked questions concerning the incident, he refused to answer on the grounds that his answers might tend to incriminate him.

From this testimony by Burrows, the plaintiff surmises that Burrows would have asserted the same testimonial privilege at the underlying trial. The plaintiff argues that Attorney Boeckler should have called Burrows to the stand during the trial because Burrows' asserting his privilege against self-incrimination would have tended to corroborate in part Christopher Abbott's testimony, due to the inference the jury would have drawn from the fact that Burrows had refused to testify. The plaintiff does not specify what inference the jury would have drawn, nor how Burrows' refusal to testify would have helped him. The plaintiff concludes that the reason Attorney Boeckler did not pursue this trial strategy was his fear of implicating Burrows—in contravention of his loyalties to Burrows as his attorney—in the criminal activities that were the subject of the underlying trial.

The State has taken the position that the trial court rightly rejected this theory advanced by the plaintiff because it was based

on conjecture and speculation. The State also points to Attorney Boeckler's testimony, at the hearing on the plaintiff's petition, that the reason he did not call Burrows to the stand involved a tactical decision made for the plaintiff's benefit. *Cf. Strickland v. Washington,* 104 S. Ct. 2052, 2065–66 (1984) ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). This decision, Boeckler testified, was made by him after he had discussed the question with the plaintiff and after the plaintiff deferred to his advice by saying: "It's up to you."

Finally, the State urges that the court reject the plaintiff's theory of the alternative strategy that had been foregone by Attorney Boeckler, because this strategy would have been improper and could have entailed a breach of professional conduct. *See* ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 4-7.6(c) ("A lawyer should not call a witness who[m] the lawyer knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege. In some instances, doing so will constitute unprofessional conduct.").

Our reading of the record indicates that the trial court had a proper basis for its decision that there was no actual conflict and for its conclusion that

> "[the plaintiff] has failed to show me that John Burrows was in a position to give testimony exonerating [the plaintiff] or to be helpful to him in any way. Instead, [the plaintiff] speculates about the effect of calling John Burrows to the stand, speculates about what his testimony might have been, speculates about his taking the Fifth Amendment and then speculates about how that might have affected the jury."

Further, although not directly pertinent to the analysis, the trial court had a basis for finding that the plaintiff suffered no potential prejudice from Attorney Boeckler's decision not to call Burrows to the stand, as the plaintiff had no right to benefit from any inference the jury might have drawn from Burrows' assertion of his privilege against self-incrimination. *See United States v. Martorano,* 620 F.2d 912, 919 (1st Cir.), *cert. denied,* 449 U.S. 952 (1980); *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir. 1973).

In sum, the plaintiff failed to establish that there was some plausible alternative defense strategy available to his trial counsel

that inherently conflicted with his loyalties to his other client, Burrows. *See Brien v. United States*, 695 F.2d at 15.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.