Merrimack
No. 83-140

THE STATE OF NEW HAMPSHIRE

v.

BARBARA J. LABONVILLE

May 6, 1985

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

KING, C.J.   The defendant, Barbara Labonville, was indicted by a Merrimack County Grand Jury for the crime of conspiracy to commit the first degree murder of her husband. RSA 629:3; RSA 630:1-a. Trial by jury resulted in a verdict of guilty, and the defendant was sentenced by the Superior Court (*Souter*, J.) to 7 1/2 to 15 years in the New Hampshire State Prison. The defendant appealed.

New counsel was appointed to represent the defendant on appeal, and he moved for a new trial on the ground that she had been denied the effective assistance of counsel. After a hearing, the Superior Court (*Dickson*, J.) denied the motion for a new trial. The only issue before us in this appeal is whether the representation of the defendant by her trial counsel was constitutionally defective. Other issues raised in the earlier appeal were waived at oral argument. We affirm the conviction.

The testimony at the hearing on the defendant's motion for a new trial revealed that she was represented at trial by an attorney who had previously represented her with respect to civil matters which

arose from her husband's death. When the defendant was indicted for conspiracy to murder her husband, she conferred with representatives of the Public Defender Program concerning legal representation on that charge. The defendant told her attorney that she was not comfortable with representation by another attorney from the Public Defender Program, and her former attorney was subsequently appointed to represent her in the pending criminal matter.

After his appointment to represent the defendant as an indigent, the attorney signed a retainer agreement with the defendant. The fee arrangement provided for compensation to the attorney at his regular rate of $85 per hour for out-of-court time and $100 per hour for in-court time, if the defendant was acquitted of the criminal charge. The parties contemplated that the money to pay these legal expenses would come from the $153,000 in proceeds payable to the defendant as the beneficiary of two insurance policies on her husband's life. If the defendant was convicted she would pay no fee, and the attorney planned to recover from the State alone at the rate of $20 per hour for out-of-court time and $30 per hour for in-court time. The attorney testified that he would have reimbursed the State in the event that he was paid by the defendant. The State eventually paid him $1,500 for his services on behalf of the defendant and $900 for his expenses.

Prior to trial, the State and the defendant held plea bargaining negotiations. At the time, the Merrimack County Superior Court, as a matter of policy, would not accept as binding sentencing recommendations of the attorney general's office. Despite this policy, the assistant attorney general in charge of the prosecution in this case received permission from the court to inform the defendant of what the State would recommend for a sentence if she pled guilty. The prosecutors told the defendant that the State's recommendation would be a prison sentence of 4 to 8 years if she pled guilty.

When the defendant and her attorney left the attorney general's office after the plea negotiating session, the defendant wanted to reject the State's offer. The defendant's attorney testified that he knew that a sentence recommendation was not binding on the court and he felt that the particular judge sitting on the case would reject the State's recommendation. He advised the defendant of both of these considerations, but told her that the offer was "worth considering." According to the attorney, he asked the defendant to "sleep on it" over the weekend. Although the testimony concerning the advice given to the defendant by her attorney was conflicting, both he and the defendant testified that they had discussed the possibility of a guilty plea following the plea negotiations. The defendant finally decided to reject the plea offer and let the case go to trial. Following

her conviction, she was sentenced to a term of imprisonment of 7 1/2 to 15 years.

The defendant argues on appeal that her trial attorney provided her with ineffective assistance of counsel because he represented her on the criminal charge under a contingent fee arrangement. Although the defendant raised two other grounds of ineffective assistance in her notice of appeal, she briefed and argued only the issue based upon the contingent fee agreement. We will therefore not address the two issues which were not briefed or argued. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

■ The defendant contends that her attorney's representation was ineffective in violation of both the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. We begin as we must by first addressing the State constitutional protections. *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). "[O]ur State Constitution is to be read to guarantee, as a fundamental right, the effective assistance of counsel." *Abbott v. Potter*, 125 N.H. 257, 259, 480 A.2d 118, 119 (1984) (citing N.H. CONST. pt. I, arts. 12 and 15).

■■ "The constitutional standard by which we measure the performance of a lawyer representing his client in a criminal case is 'reasonable competence.'" *State v. Guaraldi*, 124 N.H. 93, 98, 467 A.2d 233, 236 (1983) (quoting *State v. Perron*, 122 N.H. 941, 946, 454 A.2d 422, 424 (1982)). We have consistently held that the State Constitution does not guarantee either perfection in trial tactics, or success by the defendant. *Id.; State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971). The question we must consider, therefore, is whether the fee arrangement in this case caused the attorney's representation of the defendant to be less than reasonably competent.

The Code of Professional Responsibility for New Hampshire Lawyers clearly forbids contingent fee arrangements in criminal cases. "A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case." CODE OF PROFESSIONAL RESPONSIBILITY FOR NEW HAMPSHIRE LAWYERS DR 2-106(C) (1984); *see also* ABA STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION Standard 3.3(e) and commentary to Standard 3.3(e) (approved Draft 1971). An attorney should not defend a criminal defendant pursuant to a contingent fee agreement because such an arrangement can create a conflict between the interests of the client and those of the attorney. Where an attorney is to be paid only if his client is acquitted, the attorney may be tempted to seek a full trial of the case, even

though acceptance of a plea bargain or other relief would better serve the client. For this reason, professional ethics prohibit such arrangements, and attorneys who violate professional standards are subject to discipline.

We note, however, that arrangements by which attorneys charge a higher hourly rate for trial work are entirely acceptable, and yet arguably provide an economic incentive to go to trial rather than to plea bargain. The problem of economic or result incentives is a matter of degree and must be weighed on the facts of each case.

■ While we recognize the danger presented by the use of contingent fee arrangements in criminal cases, we reject the defendant's proposed analysis. The defendant argues that an attorney's representation pursuant to a contingent fee arrangement in a criminal case is necessarily ineffective assistance of counsel under the New Hampshire Constitution. N.H. CONST. pt. I, art. 15. The defendant wrongly assumes that an attorney's representation in a criminal case will never satisfy the constitutional standard of reasonable competence if the representation was undertaken pursuant to a contingent fee arrangement. Although, in some instances, such an arrangement might impair the effectiveness of counsel, in other instances, it might not. The dispositive inquiry is whether, under the present facts, the fee arrangement impaired the representation of the defendant by her attorney.

■ In *Abbott v. Potter*, 125 N.H. 257, 480 A.2d 118 (1984), we considered the analogous problem of whether an attorney's representation of two defendants in a criminal case rendered his assistance constitutionally ineffective due to the potential conflict between the two clients' interests. We held, on the issue of effective assistance of counsel, that the protection afforded under the State Constitution is the same as that afforded under the Federal Constitution. *Id.* at 259, 480 A.2d at 119. We adopted the following rule: " 'In order to demonstrate a violation of his [constitutional right to the effective assistance of counsel], a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* at 259, 260, 480 A.2d at 119 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). We now hold that this is also the appropriate test for determining whether an attorney's representation of a criminal defendant under a contingent fee agreement is constitutionally defective.

The trial court in this case found that "there has been no showing that the conflict of interest was actual or genuine to the point of adversely affecting trial counsel's representation." Our standard of review on this issue is whether the trial court's ruling was correct as

a matter of law. In order to review this ruling, we must examine the record produced below.

■ The defendant claims that her attorney failed to advise her properly concerning her right to plead guilty. Although the testimony was contradictory concerning the discussions which took place between the defendant and her attorney, they both testified that they had discussed the plea negotiations and that the attorney had told the defendant that he believed a lesser sentence recommendation would not be accepted by the judge assigned to the case. Such advice was reasonable in the circumstances of this case. We therefore affirm the trial court's finding that the conflict did not adversely affect trial counsel's representation.

Since the applicable State and Federal constitutional standards in this case are the same, we need not separately address the merits of the defendant's claims under the Federal Constitution.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.