Merrimack
No. 84-223

ROLAND E. HOPPS

v.

STATE BOARD OF PAROLE & a.

August 15, 1985

134

*Bertram D. Astles*, of Derry, by brief and orally, for the petitioner.

*Stephen E. Merrill*, attorney general (*Steven L. Winer*, attorney, on the brief and orally), for the State.

SOUTER, J.   In 1982, the present petitioner was tried for the arson of his own house, and in a joint trial his then wife was tried for conspiracy to commit the same act of arson. The wife was acquitted, but the petitioner was convicted and sentenced to serve a term of imprisonment and to pay a fine. The petitioner took a direct appeal from his conviction, which we affirmed in *State v. Hopps*, 123 N.H. 541, 465 A.2d 1206 (1983). After the petitioner's release from prison, his parole officer notified him that he would have to arrange a schedule of installments to pay the fine. The petitioner then brought a petition for habeas corpus collaterally attacking his conviction on the ground that he had been denied the effective assistance of counsel. He claimed that representation by his privately retained trial counsel was tainted by a conflict of interest arising from counsel's joint representation of both the plaintiff and his wife. The same judge who had presided at trial (*Johnson*, J.) heard the habeas claim and denied relief. We affirm.

The plaintiff rests his habeas claim on the guarantees of effective assistance of counsel provided by part I, article 15 of the Constitution of New Hampshire, and by the sixth and fourteenth amendments to the Constitution of the United States. In accordance with our customary practice, we will independently consider the plaintiff's State constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), looking to cases from other jurisdictions solely for their help in dealing with the issues of State law. *See Michigan v. Long*, 103 S. Ct. 3469, 3475–76 (1983). In the present instance, however, the State standards are identical with their federal counterparts. *Abbott v. Potter*, 125 N.H. 257, 259–60, 480 A.2d 118, 119 (1984). Therefore, the reasons that support the denial of relief will apply equally to all claims, and we need not address the federal issues separately.

While the general standard for judging assertions of ineffective assistance of counsel is that of reasonable competence, *Breest v. Perrin*, 125 N.H. 703, 705, 484 A.2d 1192, 1194 (1984); *Strickland v. Washington*, 104 S. Ct. 2052, 2064–65, *reh'g denied*, 104 S. Ct. 3562 (1984), special rules apply when such a claim is predicated on a conflict of interest arising from one lawyer's simultaneous representa-

tion of more than one defendant. *Abbott v. Potter supra; Cuyler v. Sullivan*, 446 U.S. 335 (1980). When a defendant has not objected at trial to such dual representation, we have held that in order to demonstrate a violation of his rights under part I, article 15,

> "'a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). '[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' *Id.* at 349–50; *see Brien v. United States*, 695 F.2d 10 (1st Cir. 1982)."

*Abbott v. Potter, supra* at 259–60, 480 A.2d at 119 (quoting *Cuyler v. Sullivan, supra* at 349–50).

■ The United States Court of Appeals for the First Circuit has explained that relief under the rule in *Cuyler* requires proof of two elements: (a) some plausible alternative defense strategy or tactic that trial counsel might have pursued; and (b) an inherent conflict between that alternative defense and other demands and interests arising from counsel's representation of another person. *Brien v. United States, supra* at 15.

We must begin our examination of the petitioner's claim, therefore, by examining the theories of defense that he raised at trial, as a preface to considering what alternative strategies or tactics might have been open to him. The defense as reflected in closing argument rested essentially on two points. First, counsel urged the jury to find that the items of circumstantial evidence of guilt against both parties were the unpersuasive results of a mishandled investigation. Second, he argued that the fire in question was more likely the result of flawed electrical wiring than the product of arson.

In the present proceeding the petitioner contends that his trial counsel should have pressed one of two other arguments: (a) that the circumstantial evidence did not point more forcefully to the petitioner, rather than to his wife, as the person who actually set the fire, and (b) that on the evidence it was more likely that the wife set it. The petitioner assumes that if the jury had accepted the former argument it would have acquitted him because it could not have determined who set the fire; he assumes that if the jury had accepted the latter, it would have acquitted him on a finding that his wife had set it.

■ We, however, conclude that neither argument was open to him. Neither argument rests on an adequate evidentiary basis, and in fact each argument flatly conflicts with evidence that includes

the petitioner's own testimony at the trial. Moreover, the first argument rests on legal error.

The evidentiary record against which the petitioner's arguments must be measured can be summarized briefly. The opinion in *State v. Hopps*, 123 N.H. 541, 465 A.2d 1206, states the facts generally, and here we need to describe only the evidence particularly bearing on the habeas claim.

On August 30, 1981, the petitioner and his wife returned to Littleton after three days in Maine. After stopping at their house for a short time about 2 p.m. they drove to Lisbon. About 8:30 p.m. a neighbor observed smoke coming from the house, and the fire department promptly extinguished a basement fire. The petitioner and his wife returned and remained at the house until about 10:50 p.m., when they drove away together. At 11 p.m. a neighbor heard two explosions and called the fire department, which returned to extinguish an upstairs fire that did major damage, and was later said to have been caused by an accelerant in one of the bedrooms.

Starting with this general setting, the petitioner's first alternate theory of defense is that there was an equal likelihood that he or his wife spread the accelerant and caused the second fire to break out upstairs, so that the jury could not reasonably find that the petitioner rather than his wife was responsible. Ironically, the prosecutor at trial hinted at the same argument when he told the jury that "[i]t is hard to tell who may have struck the match."

At the least, however, such an argument would have tested the outer limit of what was ethically permissible on the evidence. The only testimony about the activity of the petitioner and his wife inside the house between the first and second fires came from the petitioner. He said that after the last fireman had gone, he went through the entire house to "secure" it, putting down windows, including a window in the bedroom in question. He said that when he returned to the ground floor his wife was talking on the telephone. When she finished her call they left the house.

Since there were no admitted eyewitnesses to the spreading of the accelerant or the placement of an incendiary device, the jury could only identify the arsonist on the circumstantial evidence, *inter alia*, that an accelerant had been used and that the petitioner and his wife had been in the house just before the explosions. Strictly speaking, however, the petitioner's own testimony placed him in the bedroom, while there was no testimony that his wife had entered it in the time between the fires. Thus, it would have been improper to argue that there was no basis to find the petitioner's presence in the bedroom more likely than his wife's, or that there was no basis to find his agency in setting the fire more likely than hers.

This first alternative argument would, however, have suffered a more obvious flaw even than its evidentiary weakness. Its silent premise is that the petitioner would have been entitled to an acquittal if the evidence pointed equally to himself and his wife as the arsonist. This legal assumption is false, however. For if the evidence tended to prove beyond a reasonable doubt and with equal plausibility that both had set the fire, the jury could properly have convicted the petitioner. It would thus have been objectionable to argue that the jury could not convict the petitioner merely because the evidence had pointed to him and his wife with equal force.

Assuming that there could be any dispute about the evidentiary basis for the first alternative defense theory, there is no room to argue that there was evidentiary support for the second. The petitioner and his new appellate counsel both claimed that a neighbor, Mrs. Richards, had testified that she had seen the petitioner leave the house before the second fire, but had not testified that she had seen the wife leave. Since there was evidence that both had been inside the house, the petitioner would have had his trial counsel argue that the petitioner left first, with the result that the wife was more probably the one who remained behind to set the fire.

This, however, is simply a misrepresentation of the evidence, and any jury argument based on it would have been clearly objectionable. Mrs. Richards in fact gave the following testimony:

"Q. You say you looked out your window?

A. Yes, because I heard some voices, and I looked and I could see . . . Mrs. Hopps was on the front porch and Mr. Hopps was coming out of the house.

Q. . . .

A. . . . I saw him going out behind the house on the side of the house . . . .

. . .

A. . . . When he went down to the side, by the side of the house, I went back to lay down, and that was when I heard someone talking, so I got up again and looked out the window again. It was Mrs. Hopps, she was on the porch and Mr. Hopps was coming out of the house.

Q. Out of the front?

A. Yes, out of the front door.

Q. Then what did you see?

A. Well, they got in their car and went down the road."

Thus, on Mrs. Richards's testimony, it appears more likely that the petitioner was the last one to leave the house.

The second defense theory would have run up against even more inconsistent testimony, however. The petitioner himself twice testified that he and his wife left the house together after the first fire. And, as we have seen, his own indication that he had been the last one in the upstairs bedroom where the second fire broke out would have undercut any argument that his counsel might have tried to make to the disadvantage of the wife. Thus, the evidence was at odds with the theory that the wife was the last one out, and any finger-pointing at her would have been improper, implausible, and probably very damaging to the petitioner. Counsel's failure to engage in it cannot be attributed to any conflict of interest. *See United States v. Mers*, 701 F.2d 1321, 1331 (11th Cir.), *reh'g en banc denied*, 707 F.2d 523, *cert. denied*, 104 S. Ct. 481 (1983).

■■ Since we have found no alternative strategy or tactic of defense that would have conflicted with defense counsel's other responsibilities, we reject the petitioner's related argument that the trial court committed reversible error in failing *sua sponte* to question counsel or the petitioner and his wife about the possibility of a conflict. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler v. Sullivan*, 446 U.S. at 347 (footnote omitted). *See also Wood v. Georgia*, 450 U.S. 261, 272 (1981).

■ While we thus hold that the petitioner has no constitutional basis to claim that it was reversible error for the trial court to proceed without an inquiry into possible conflicts, making such an inquiry would have been the better course to take, in the light of the undeniable risk of conflict in dual representation cases. "The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several codefendants except in unusual situations. . . ." 1 ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 4-3.5(b) (2d ed. 1980). There are similar cautions against multiple representation in the Code of Professional Responsibility for New Hampshire Lawyers, DR 5-105, and in the ABA Model Rules of Professional Conduct, Rule 1.7(b). All three of these standards provide further that multiple representation should only be undertaken if no conflict is likely to develop, Standard 4-3.5(b)(i); DR 5-105(A), (C); Rule 1.7(b)(1), and only if the clients give informed consent to such representation, Standard 4-3.5(b)(ii); DR 5-105(C); Rule 1.7(b)(2).

The extent of the trial court's affirmative responsibility to make certain that these standards have been satisfied has been less clear.

It is worth noting, however, that the ABA Criminal Justice Standards would require that the client's informed consent be verified by judicial inquiry on the record, Standard 4-3.5(b)(iii), a procedure also called for by Rule 44(c) of the Federal Rules of Criminal Procedure. Such a procedure would tend to eliminate problems before trial, and would lessen the likelihood of protracted post-trial collateral proceedings like the one before us. Our citation to *Abbott v. Potter*, 125 N.H. 257, 480 A.2d 118 indicates that problems arising from multiple representation are frequent enough for concern.

In the exercise of our supervisory jurisdiction, therefore, we will require in all future criminal cases involving multiple representation that both counsel and the trial court be responsible for making a record indicating that counsel has investigated the possibility of conflict of interest, has discussed the possibility with each client, and has determined that conflict is highly unlikely. Similarly, counsel and the court will be responsible for making a record of each client's informed consent to dual representation; that consent must rest on the client's understanding that he is entitled to counsel representing him alone. The trial court should address the issue on the record as early in the proceedings as is practicable, and must refuse to allow dual representation unless the record indicates convincingly that the potential for conflict is very slight. While this may not be our last word on this subject, we would wish to assess experience under this procedure before we would consider a rule that would flatly preclude dual representation or one that would shift the burden of proof when a conviction is attacked collaterally on grounds of conflict. *Cf. United States v. Foster*, 469 F.2d 1 (1st Cir. 1972).

Before concluding this opinion, we need to mention several subsidiary claims, albeit briefly. In amendments to his original petition in this case the petitioner asserted that he had had inadequate notice of the arson charges against him, due in part to the failure of the superior court to hold a formal arraignment. The State controverted these claims, and specifically alleged that the petitioner had executed a written waiver of formal arraignment under Superior Court Rule 97. The petitioner presented no evidence in support of his claim and thus failed to carry his burden to prove entitlement to relief. *See Roy v. Perrin*, 122 N.H. 88, 94, 441 A.2d 1151, 1155 (1982).

Last, the petitioner sought to raise an equal protection issue based on the denial of a petition for appointed counsel in this proceeding. The plaintiff did not raise this claim below and may not

originate it here. *State v. Shannon*, 125 N.H. 653, 657, 484 A.2d 1164, 1168 (1984).

There was no error in the denial of relief on petition for writ of habeas corpus.

*Affirmed.*

All concurred.