Grafton
Merrimack
No. 86-382

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL D. CYRS

MICHAEL CYRS

v.

MICHAEL CUNNINGHAM, WARDEN,
THE NEW HAMPSHIRE STATE PRISON

July 22, 1987

*Stephen E. Merrill*, attorney general (*Bradford W. Kuster*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant-petitioner.

BROCK, C.J.  This is a consolidated appeal from not only the two convictions of the defendant-petitioner (defendant) for the sale of cocaine, RSA 318:B-2, and his one conviction for possession of marijuana, second offense, RSA 318-B:2, but also the denial of the defendant's petition for a writ of habeas corpus on the ground that he was denied the effective assistance of trial counsel. N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. We reverse the denial of the petition.

The facts pertaining to the defendant's assertion that he was denied the effective assistance of counsel involve a triangular web weaving together the defendant; his attorney, Wayne W. Presby; and the informant against the defendant, Robert Girard. Prior to being retained by the defendant, the defendant's attorney was involved in an altercation with Girard, who eventually turned out to be the primary informant against the defendant in a drug investigation. The attorney filed a misdemeanor complaint against Girard because Girard had damaged the attorney's car in the course of the scuffle; a *nolle prosequi* was later entered on that charge. In the course of filing the complaint, the attorney agreed to be a witness against Girard, whom he observed driving,

apparently after having been adjudicated an habitual offender under RSA chapter 262. The State used the habitual offender charge to induce Girard to be an informant in its drug investigation.

After having agreed to represent the defendant on the drug charges, the attorney became aware that he had also been a target of the investigation which had netted his client. Discovery proceeded for a period of time, and on the day of trial, the defendant requested appointment of new counsel based on his counsel's alleged conflict of interest. The defendant did not cite either his attorney's involvement in the drug investigation or the potential that Presby might be called as a witness against Girard on an operation by an habitual offender charge as grounds for his request. Instead, he stated that the attorney had not done sufficient work on the case and that the attorney was not operating entirely in the defendant's interest. The Trial Judge (*Johnson*, J.) questioned the defendant and determined that the attorney could continue to represent him. Thereafter, the defendant was convicted on three of the charges against him, and no timely appeal was taken. We subsequently permitted him to file a latè appeal to this court from the substantive trial.

In the interim, the defendant also filed a *pro se* petition for a writ of habeas corpus alleging ineffective assistance of counsel. The Superior Court (*Manias*, J.) denied the defendant's petition, applying the ineffective assistance of counsel standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).

The defendant raises two issues on appeal. The first concerns whether his convictions must be reversed because of the conflict of interest existing between himself and his attorney. He raises several points on this issue. First, the defendant argues that because of the conflict existing between himself and his attorney, the attorney did not attempt to negotiate a plea bargain with the State because he feared that the defendant might provide incriminating information against the attorney in return for a lesser penalty on the drug charges. Second, the defendant argues, the attorney's alleged involvement as a target of the investigation requires a *per se* rule of reversal. Third, while he concedes that the issue was not raised at the hearing on the habeas petition, the defendant asserts that reversal is required under *Holloway v. Arkansas*, 435 U.S. 475 (1978), because the trial judge failed to hold a hearing to determine whether the attorney might be required to testify against Girard both on the habitual offender charge and on the attorney-as-target issue. Finally, the defendant argues that this

court should exercise its power of general supervision over the trial courts of the State pursuant to RSA 490:4, and order reversal of the convictions because of the egregious nature of Presby's conduct.

The second issue raised by the defendant concerns the jury instructions given by the trial judge at the close of the trial. Because we dispose of this case on the conflict of interest issue, we do not reach this second issue. We therefore proceed to consider the claimed conflict of interest between the defendant and his attorney.

The first issue we address is procedural in nature. Citing *State v. Westover*, 127 N.H. 130, 497 A.2d 1218 (1985), the State maintains that the defendant should be precluded from arguing that *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *Abbott v. Potter*, 125 N.H. 257, 480 A.2d 118 (1984), are applicable to the facts of his case, rather than the more stringent test of *Strickland v. Washington*, 466 U.S. 668 (1984), because he did not argue their applicability below. To the contrary, we note that the issue of ineffective assistance of counsel based on a conflict of interest under the State and Federal Constitutions was in fact presented to the superior court in the habeas hearing. *Westover supra* is therefore inapposite because, in that case, the State constitutional argument was never presented to the trial court. We therefore will proceed to consider the substantive issue in the case at bar.

We have held that the Federal and State Constitutions provide defendants with equal levels of protection in ineffective assistance cases, *see Hopps v. State Board of Parole*, 127 N.H. 133, 135, 500 A.2d 355, 356 (1985); therefore, we do not consider the State and federal issues sequentially as would normally be required under *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983).

On the conflict of interest issue, the first question is which standard, that of *Strickland v. Washington supra* or *Cuyler v. Sullivan supra*, should be applied to the ineffective assistance of counsel claim in this case; namely, ineffective assistance based on a conflict of interest unrelated to multiple representation. The basis for the assertion of ineffective assistance of counsel in *Strickland v. Washington supra* was certain omissions by Strickland's attorney in preparing for a sentencing proceeding. The United States Supreme Court held that in such a case the defendant must satisfy a two-pronged test in order to obtain relief:

"[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show

that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland, supra* at 687; *see also State v. Dennehy,* 127 N.H. 425, 428, 503 A.2d 769, 771 (1985) (applying *Strickland* test under the State Constitution).

In *Cuyler v. Sullivan supra,* the Court enunciated a less stringent standard applicable to multiple representation cases:

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . . [A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. . . . But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

*Cuyler, supra* at 348, 349–50 (footnote omitted) (citations omitted); *see also Abbott v. Potter,* 125 N.H. at 259–60, 480 A.2d at 119 (applying *Cuyler* test under State Constitution in multiple representation context).

■ The question then is, as between these two tests, which is applicable to asserted defendant-attorney conflicts of interest outside the *Cuyler* multiple representation context. We note that the United States Supreme Court has itself broadly characterized its holding in *Cuyler* as being addressed to "a claim that counsel's assistance was rendered ineffective by a conflict of interest." *Strickland,* 466 U.S. at 683. In addition, this court has specifically applied *Cuyler* outside the multiple representation context. *See State v. Labonville,* 126 N.H. 451, 455, 492 A.2d 1376, 1379 (1985) (applying *Cuyler* in "analogous" situation of contingent fee arrangement in criminal case). We therefore see no theoretical or practical bar to applying either *Strickland* or *Cuyler* to non-multiple representation defendant-attorney conflict of interest cases. Thus, the issue before us today is whether the conflict of interest in this case is more analogous to that existing in multiple representation cases or to ineffective assistance of counsel claims based on counsel's inadequate performance. For the reasons set forth below, we hold that the less stringent standard of *Cuyler v.*

*Sullivan*, 446 U.S. 335, is applicable in the defendant-attorney conflict of interest context and, further, require a *per se* rule of reversal in cases where the State has actual knowledge that the attorney was a subject of the same criminal investigation which resulted in the indictment of his client.

The major distinction we see between the broad category of ineffective assistance claims and the subcategory of ineffectiveness claims based on a defendant-attorney conflict of interest is that in the latter area the question of attorney loyalty becomes most acute. Although inadequate performance by an attorney amounting to ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, is arguably a form of disloyalty to his or her client, the source of this disloyalty is different from that existing in conflict of interest cases. In the inadequate performance case, the source may be laziness, overwork, or simple incompetence on the part of an attorney. In the conflict of interest case, the source of disloyalty is far narrower; namely, conflicting loyalties adversely affecting the attorney's performance.

In the case of multiple representation of criminal defendants, the conflict arises from the fact that an attorney has a duty to both or all of his or her clients to represent their interests to the best of his or her ability. The problem arises when the proper representation of one client necessarily involves harming the interests of another. In such an instance, the existence of a potential for a conflict of interest is, or should be, immediately obvious to everyone concerned—one lawyer representing more than one individual. *Cf.* SUPER. CT. R. 91-A (effective September 1, 1987).

Often less apparent, however, is a conflict of interest, the source of which is other than the number of defendants represented by a single attorney. In such a case, the source of the conflict may be more subtle and not immediately apparent. Examples of this would be where trial counsel has a financial interest in a business owned by his or her client or the facts of the case at bar: where an attorney is the subject of the same criminal investigation which forms the basis for later indictment of his or her client. Thus, the dangers inherent in multiple representation are similar to, though more obvious than, those existing in other conflicts cases. Therefore, *Cuyler v. Sullivan*, 446 U.S. 335, is the relevant standard for defendant-attorney conflict of interest cases, and the application of the *Strickland* standard in this case was error.

Although *Cuyler* would normally be the applicable standard in the attorney-as-target case, the unique facts of this case lead us to the conclusion that here a *per se* rule of reversal is

necessary. In this instance, the habeas judge found that the defendant was aware at trial that the attorney had been a subject of the investigation. Furthermore, the prosecuting attorney was present at the pretrial deposition where the defendant's attorney determined that he had been a target of the investigation, and therefore, the prosecuting attorney had actual knowledge of the conflict. Thus, on these facts, when this specific conflict was not presented to the trial court by the defendant even if the defendant was aware of the existence of the claim, and the State was aware of the conflict, then a later habeas corpus petition must be granted if the State fails to disclose the conflict to the trial court. We also note a further conflict between the interests of the defendant and his counsel that requires us to vacate the verdicts under our *per se* rule. The informant against the defendant was induced to cooperate with the State because he knew that the State could prosecute him for the felony of operating his car as an habitual offender. *See* RSA 262:23 (Supp. 1986). The State was in a position to prosecute the informer because the defendant's lawyer, Presby, had seen the informer operating the car while the habitual offender order was in effect. Presby's availability as a witness against the informer was therefore the necessary condition for the informer's cooperation with the police in prosecuting Presby's client. Without defense counsel's evidence in the one matter, the police would not have been in a position to prosecute his client in the other. The conflict is clear and outrageous. Since both the drug and habitual offender prosecutions were, or would have been, instituted at the county level, we may infer that the county prosecutor probably knew of the circumstances. On these narrow facts, then, the habeas petition should have been allowed, and the decision of the superior court is therefore reversed.

*Reversed and remanded.*

JOHNSON, J., did not sit; the others concurred.