Richard WINKLER, Petitioner,

v.

John KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.

No. 92 Civ. 5805 (GLG).

United States District Court, S.D. New York.

Feb. 9, 1993.

---

Robert N. Isseks, Goshen, NY by Robert N. Isseks, Alex Smith, for petitioner.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, NY (Diane E. Selker, Asst. Dist. Atty., Richard E. Weill, Second Deputy Dist. Atty., of counsel), for respondent.

## OPINION

GOETTEL, District Judge.

This habeas corpus petition raises two concise grounds which, surprisingly, do raise a constitutional issue. The grounds are:

(1) Whether the existence of a contingency fee agreement between petitioner and trial counsel is per se violative of petitioner's Sixth Amendment right to effective assistance of counsel, and

(2) Whether the contingency fee agreement in this case resulted in constitutionally deficient legal representation.

## I.  PROCEDURAL HISTORY

Petitioner was indicted along with a co-defendant for the murder of his father on October 24, 1980. The co-defendant was hired by petitioner to murder the victim. They were tried on September 24, 1981 and were found guilty of murder in the second degree. Petitioner was then sentenced to a term of 25 years to life imprisonment. Through a torturous series of proceedings and appeals over the next decade, the petitioner has never protested the sufficiency of the overwhelming evidence against him but has limited his attack to the claims set forth in this petition.

Initially, he brought a motion to vacate the judgment pursuant to New York's Criminal Procedure Law § 440.10. A hearing was held before Westchester County Court Judge Marasco, who denied the motion. In his decision of July 13, 1984, Judge Marasco made the following findings, *inter alia:*

At the trial, defendant was represented by Robert A. Hufjay, Esq. as his attorney. An agreement dated October 28, 1980, retaining Robert Hufjay was signed by the defendant, Lanie Sattler, the defendant's mother, and Annie Winkler, the defendant's grandmother. The agreement provided that Robert Hufjay was to be compensated as follows: $2,000.00 on execution of the agreement and $18,000.00 to be paid by Annie Winkler from a bequest to be received from the Estate of Irving Winkler. The agreement further provided, subject to the approval of Richard Winkler, that in the event Richard Winkler is acquitted or found not guilty by reason of insanity or other legal reasons, and inherits the Estate of Irving Winkler, that Richard Winkler shall pay as additional legal fees the sum of $15,000.00. When that agreement was presented to Richard Winkler for his approval, Richard Winkler changed the sum of $15,000.00 to $25,000.00. Simultaneously with Richard Winkler's approval of the written agreement, he executed an assignment of $20,000.00 from his share of the inheritance to Robert Hufjay.

*People v. Winkler,* Indictment No. 80–1085, slip op. at 2 (Westchester County Ct. July 13, 1984). Judge Marasco found it unnecessary to pass upon the legality of the retainer unless there was an actual deprivation of effective assistance of counsel. He found that, in fact, the petitioner had had effective assistance. An appeal was taken to the Appellate Division, Second Department which, in a decision on May 11, 1987, held that a contingency fee agreement amount to ineffectiveness *per se. People v. Winkler,* 128 A.D.2d 153 (2d Dep't 1987). The New York Court of Ap-

peals reversed, holding that the defendant had the burden of demonstrating the alleged ineffectiveness by showing that the potential conflict "affected the manner in which his attorney conducted the defense prejudicially to the defendant." (*People v. Winkler*, 71 N.Y.2d 592, 597, 528 N.Y.S.2d 360, 523 N.E.2d 485 (1988); *see also, People v. Winkler*, 74 N.Y.2d 704, 706, 543 N.Y.S.2d 380, 541 N.E.2d 409 (1989).)

In its decision, the Court of Appeals (per Bellacosa, J.) held that while the contingent fee retainer was unquestionably unethical, it did not constitute *per se* ineffectiveness of counsel. Although strongly supporting what it called the unanimous view that contingent fees in criminal cases are wrong, the court held that the agreements do not collaterally constitute a *per se* violation of a defendant's right to effective assistance of counsel. Consequently, the existence of a potential conflict should not automatically be equated with ineffective assistance. The opinion notes that an automatic reversal because of the acts of a retained attorney and his client would disproportionately penalize the public in a situation in which no advance state protection could be imposed or is even available.[1] The New York court also noted that most other state courts had rejected a *per se* test. Consequently, it remanded the matter to Westchester County Court for an evidentiary hearing on the question of whether the fee agreement affected the manner in which petitioner's attorney conducted the defense so as to prejudice the petitioner.

The second proceeding was conducted before County Court Judge Silverman in July 1990. An extensive evidentiary hearing was held. Petitioner, represented by retained counsel, contended that his trial counsel should have raised an intoxication defense. The County Court disagreed with this contention noting that, according to his trial counsel's testimony, his client had never contended that his memory was impaired or that his actions were influenced by the

use of drugs. To the contrary, petitioner claimed to have a vivid memory of the events and to be totally innocent of the murder. (He testified at trial.) Moreover, since the evidence indicated that this was a contract murder, with no spontaneous or irrational behavior involved, an intoxication jury charge would have been irrelevant.

Another issue raised in this second *coram nobis* proceeding was the claim that defense counsel should have looked for some sort of plea bargain despite the fact that throughout, petitioner forcefully asserted his total innocence and was interested in nothing less than a complete acquittal. From the evidence adduced, the only discussion concerning the possibility of a plea was an inquiry from the trial judge as to whether the defendant would be interested in a plea resulting in the minimum sentence for murder, 15 years to life, and the defendant rejected the possibility of such a disposition. Judge Silverman concluded that most competent attorneys defending a case of this kind would have employed the same trial strategy. The Appellate Division affirmed the County Court decision and order, *People v. Winkler*, 179 A.D.2d 711 (2d Dep't 1992), and the New York Court of Appeals denied leave to appeal.

## II.  ANALYSIS

■ Respondent argues that the United States Supreme Court· has rejected the view that contingent fee arrangements in criminal cases are a *per se* violation of the Sixth Amendment. That overstates the case. In *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), two attorneys represented petitioner, who was convicted of murder. The two attorneys then represented his co-defendants at a subsequent trial where they were acquitted. The petitioner claimed he did not receive effective assistance of counsel due to a conflict of interest, and the Court of Appeals for the Third Circuit

---

**1.** That consideration is most pertinent in this case. The circumstances of the "contingent fee" are particularly suspicious. There was no need to make reference to any contingency dependent upon inheritance from the petitioner's fa-

ther since, as a practical matter, the remainder of the fee would never have been paid otherwise. Moreover, the petitioner's unilateral increasing of the amount of the contingent fee is also rather strange.

agreed. However, the Supreme Court held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719.

Respondent also points to a footnote in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 633 n. 10, 109 S.Ct. 2646, 2656 n. 10, 105 L.Ed.2d 528 (1989) which deals with situations in which forfeiture statutes make it likely defense counsel will only be paid if successful. The Court noted that this may often be the case in criminal defense work, but the fact that the federal statutory scheme may run afoul of ethical considerations does not render a federal statute invalid. *Id.* That is not the same as holding that an intentional contingency fee arrangement is appropriate. It simply reflects the contingency nature of some criminal defense work. The conventional wisdom in criminal defense is that an attorney who does not collect his fee in advance will never collect it. That approach, however, has a corollary, namely, that a defense attorney who has gotten his full pay in advance has an incentive to have his client plead guilty and avoid being involved in a time-consuming trial. Conversely, of course, assigned counsel, who are paid on a per hour worked basis, have an incentive to take matters to trial which might otherwise be better resolved by a plea.

There has been surprisingly little federal authority on the issue of contingent fee agreements in criminal cases. About the closest we can find in this Circuit is *Solina v. United States*, 709 F.2d 160 (2d Cir.1983) where the criminal defendant was represented by someone not licensed to practice law. Despite the overwhelming evidence against the defendant, the fact that his representative had been trained in law and the lack of evidence showing that representation had been incompetent, the court laid down a *per se* rule that representation by an unlicensed person requires a new trial.

While that situation has some bearing on this case, we do not see it as controlling.

The most recent Second Circuit case dealing with *per se* denial of right to counsel is an *en banc* decision, *Bellamy v. Cogdell*, 974 F.2d 302 (2d Cir.1992) *petition for cert. filed* 61 U.S.L.W. 3446 (Dec. 7, 1992) (No. 92–978). In *Bellamy*, petitioner's attorney suffered from a number of psychological ailments and neurological problems that virtually incapacitated him. He was, at the time of the trial, subject to disciplinary proceedings for continuing the practice of law. Since the Disciplinary Committee was seeking his immediate suspension, the attorney requested that he be permitted to represent the petitioner with the promise that he would not try the case himself but would leave that to a competent attorney. The state trial judge was advised of this situation, however, the petitioner was not. Counsel apparently did not keep his promise but did, in fact, represent the petitioner at trial. The attorney was subsequently suspended from the practice of law. Petitioner then moved through new counsel to vacate his conviction. The state court upheld the conviction. A habeas corpus petition brought in the Eastern District of New York was denied, the court finding that under either a *per se* rule or under the traditional *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard, the petitioner had not been denied effective assistance of counsel. A divided Circuit Court panel initially reversed this judgment finding a *per se* denial of the Sixth Amendment right to counsel. *Bellamy v. Cogdell*, 952 F.2d 626 (2d Cir.1991). However, the *en banc* court ruled 7 to 6 that the facts did not indicate a *per se* denial of Sixth Amendment rights, distinguishing both those cases in which defense counsel was not licensed to practice law at the time of trial and those cases in which the attorney was implicated in the crime with the client. 974 F.2d at 306–07. From the foregoing, we conclude that there is no well established federal law on the question and are compelled to look to state cases.[2]

---

**2.** One District Court case is perhaps worthy of

note. In *United States v. Murphy*, 349 F.Supp.

As noted earlier, the New York Court of Appeals decision also reviewed out-of-state cases. In *Schoonover v. State*, 218 Kan. 377, 543 P.2d 881 (1975) *cert. denied* 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976), there was a contingent fee arraignment between the client and Steere, her court-appointed attorney. Defendant had been charged with the murder of her husband. If she was convicted, she would not inherit from his estate. She signed an agreement with Steere that stated if she was acquitted she would pay Steere from the estate all but $10,000 (approximately $50,000). The Supreme Court of Kansas in a habeas proceeding

> interpret[ed] the petitioner's statement of points on the appeal to raise a single basic contention that the petitioner was denied effective assistance of counsel as a matter of law because of the fact that court-appointed counsel Steere was unethical and dishonest in entering into the contingent fee contract on March 4, 1974.

*Id.* 218 Kan. at 383, 543 P.2d 881. The court concluded that the unprofessional conduct of entering into a contingency fee contract is simply one factor to be considered in deciding whether there was inadequate representation by counsel. The court then found that there had been adequate representation nevertheless. The United States Supreme Court denied *certiorari.* 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976).

In *Downs v. State*, 453 So.2d 1102 (Fla. 1984), a defendant convicted of murder moved to vacate his conviction because there was a contingency fee contract with defense counsel. Like the Kansas court and the New York Court of Appeals, the Florida Supreme Court held that a contingency fee agreement, even though improper, is only one factor to be considered when determining whether a defendant has been denied effective assistance of counsel. *Id.* at 1109. In *State v. Labonville*, 126 N.H. 451, 492 A.2d 1376 (1985), on similar facts, the New Hampshire Supreme Court affirmed the lower court's ruling that "there [had] been no showing that the conflict of interest was actual or genuine to the point of adversely affecting trial counsel's representation." *Id.* at 455, 492 A.2d 1376 (*quoting* the trial court).

One of the few state authorities finding inadequate representation because of a contingent fee is the opinion of the Supreme Court of Illinois in *People v. Meyers*, 46 Ill.2d 149, 263 N.E.2d 81 (1970). The contingent fee arrangement, however, was rather unusual. Because the attorney represented the defendant's wife in a related civil case, his ultimate compensation could be increased by a longer sentence.[3] The attorney had negotiated a three to five year recommendation from the prosecutor, if one was requested by the court, in exchange for a guilty plea. However, at sentencing, he failed to mention this to the court, and the defendant was sentenced to

818 (E.D.Pa.1972), the defendant had a contingent fee contract with her attorney where he would collect his fee from her murdered husband's insurance policy if she was acquitted. However, there was also a key additional fact. In *Murphy*, the prosecution offered to certify the charge would not rise above second degree murder in exchange for a guilty plea, but defendant's attorney did not convey this offer to his client nor did he explain the different possible outcomes between a sentence based on conviction and one based on a plea. Rather, he advised the defendant to stick to her plea of not guilty. The court held that a conflict had arisen because the lawyer stood to gain by his advice.

**3.** As the court's decision describes it:

> Sometime prior to defendant's plea of guilty, his wife contacted his appointed counsel to inquire about the possibility of a cause

of action against the tavern in which defendant had been drinking heavily shortly before the burglary. The attorney told her that he would investigate the prospects, and informed her that his fee would be one-third of any sums recovered. He apprised defendant of the fact that he was looking into the possibilities of a dramshop action for Mrs. Meyers, and that the amount of her recovery, if any, might depend upon the length of time she was deprived of his support by virtue of his imprisonment. He offered to withdraw from either case if defendant wished, but defendant requested him to continue in both matters. Mrs. Meyers was notified several months after defendant was sentenced that further investigation had shown the dramshop action to be without merit.

263 N.E.2d at 82.

a term of five to ten years. Consequently, counsel might recover a higher fee on the civil action. The Supreme Court of Illinois found this to be a clear conflict of interest and remanded with the direction to vacate the judgment and permit withdrawal of the plea.

From the foregoing review of existing state law, we conclude that the decision of the New York Court of Appeals was entirely correct. The existence of a contingency fee agreement in a criminal defense does not amount to *per se* ineffective assistance of counsel.

There remains the petitioner's alternative claim that there was in fact inadequate representation in this case. County Court Judge Silverman conducted a lengthy fact-finding and came to the opposite conclusion. This conclusion was affirmed by the New York appellate courts. These conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Petitioner here has not even attempted to establish that the requirements of that section, a hearing on the merits, a court of competent jurisdiction, a written finding or opinion, do not exist. Rather, he argues that the hearing record "clearly established" that trial counsel's actions were prompted by the contingent fee agreement because there was no other explanation for them. Petitioner's Memorandum of Law at 34. As we have indicated earlier, there were substantial, and in some respects unavoidable, explanations for defense counsel's strategy. The findings of the state court are granted deference under 28 U.S.C. § 2254(d). *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Saccomanno v. Scully*, 758 F.2d 62, 65 (2d Cir.1985).

The petition is in all respects denied.

SO ORDERED.