**STATE of Maine**

**v.**

**Bret POKORNY.**

Supreme Judicial Court of Maine.

Argued March 18, 1983.

Decided April 14, 1983.

David W. Crook, Dist. Atty. (orally), Skowhegan, for plaintiff.

Law Offices of George M. Carlton, Jr., William C. Leonard (orally), Bath, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER and VIOLETTE, JJ.

McKUSICK, Chief Justice.

Bret Pokorny was convicted of manslaughter, Class C, 17–A M.R.S.A. § 203(1)(A) (1983), after entering a plea of *nolo contendere* in the Superior Court (Somerset County). In this appeal, he claims that the Superior Court erred in denying his motion to withdraw his *nolo* plea and reinstate his previous plea of not guilty. Defendant argues that his lawyers had a conflict of interest while representing him throughout the plea negotiation process and the change of plea hearing, and therefore that defendant's *nolo* plea must be deemed to have been entered without the effective assistance of counsel. We disagree. We refuse to rule that a *nolo* plea entered on the advice of attorneys subject to a possible conflict of interest is *per se* revocable; in this case the record amply supports the trial justice's finding that defendant in fact received sound advice from his lawyers, whose alleged representational disability in no way adversely affected their performance. Accordingly, we affirm the judgment of conviction.

### The Facts

On November 27, 1980, defendant Bret Pokorny was one of five young men riding in an automobile that went off the road and

crashed near Jackman, Maine. The car's other occupants were Charles ("Chip") Foster, Timothy Staples, Glenn Frost, and Christopher Williams. Williams died a week later as a result of injuries sustained in the accident. On July 21, 1981, Pokorny was indicted for manslaughter. He retained attorney Roger Katz of Augusta to represent him, and on August 12 defendant entered a plea of not guilty.

Almost a year later, after defendant's attorney had spent a considerable amount of time preparing his client's case, the State moved for pretrial consideration of "the potential for conflict of interest arising during trial on the part of defense attorney, it appearing that said attorney may be called as a witness at trial." At a hearing held to investigate this issue on July 21, 1982, Katz explained that the key factual question in Pokorny's manslaughter trial would be whether Pokorny was behind the wheel at the time of the auto accident. Katz had taken a statement from Chip Foster, one of the occupants of the car, shortly after the accident occurred, in which Foster had said that he had no recollection of who among the five young men in the car had actually been driving at the time of the crash. Later, Foster told one of the assistant district attorneys working on the case that Pokorny had been driving the car at the crucial moment. Furthermore, Foster allegedly told the assistant district attorney that Katz had known that Foster's first statement was false but had told him to sign it anyway. Katz never agreed that he knew of any falsity in Foster's first statement, but nonetheless acknowledged to the court that he, Katz, might have to appear as a witness during the manslaughter trial to testify about that statement and the circumstances under which Foster had made it.

Maine Bar Rule 3.4(j) states:

> A lawyer shall not accept employment in contemplated or pending litigation if he knows, or should know, that he or a lawyer in his firm is likely or ought to be called as a witness. This rule does not apply where the predictable testimony will relate solely to uncontested matters or to legal services furnished by the lawyer, or where the distinctive value of the lawyer or his firm in the particular case would make denial a substantial hardship on the client.

Rule 3.5(b)(1), governing withdrawal from employment, states:

> If a lawyer knows, or should know, that he or a lawyer in his firm is likely or ought to be called as a witness in litigation concerning the subject matter of his employment, he and his firm shall withdraw from representation at the trial unless the court otherwise orders. This rule does not apply to situations in which the lawyer would not be precluded from accepting employment under Rule 3.4(j).

Attorney Katz suggested to the Superior Court that another member of his law firm represent Pokorny during his trial. He noted that his client wished Katz's firm to continue to represent him, and told the judge,

> We have spent hours and hours in preparation of the case. As a result, our office, and in particular, myself, are most familiar with this case, and to force us from the case at this point would require the Defendant really to go back to square one.

Essentially, Katz was urging that his firm should not be forced to withdraw from Pokorny's defense because, in the language of Rule 3.4(j), "the distinctive value of the lawyer or his firm in the particular case would make denial a substantial hardship on the client." The court proposed that Katz continue to prepare Pokorny's defense and advise him, but that Katz's law partner, Sumner Lipman, handle the actual trial. Should Katz have to testify, the court suggested that the jury ought not to know that he was Lipman's law partner. Neither Katz nor the State objected to the court's

disposition of the issue along the line of those suggestions.[1]

On July 27, 1982, a second "conflict of interest" hearing was held in the Superior Court, this one at the request of defense counsel, who suggested that one or more of the prosecuting attorneys might have to be called as witnesses in the case—again, to testify about Foster's various statements— and therefore those individuals should be disqualified from representing the State in the Pokorny case. At the July 27 hearing, the judge asked Bret Pokorny (who had not been present at the July 21 hearing) whether he wished to have Katz's firm continue to represent him.

> THE COURT: ... Mr. Pokorny, I understand that you wish to have the law firm of Lipman, Parks, Livingston and Lipman represent you; is that correct?
>
> MR. POKORNY: Yes, Your Honor.
>
> THE COURT: That is your desire?
>
> MR. POKORNY: Yes.
>
> THE COURT: Have the attorneys in that firm discussed with you the conflict of interest problem which came up?
>
> MR. POKORNY: Yes.
>
> THE COURT: And it is your desire that they continue to represent you?
>
> MR. POKORNY: Yes.
>
> THE COURT: And it is your desire that Sumner Lipman represent you in this matter?
>
> MR. POKORNY: Yes.
>
> THE COURT: Is there anything else you want to say?

> MR. POKORNY: No, Your Honor.

The hearing on the possible disqualification of certain prosecuting attorneys then continued; ultimately, the court decided that none of them was likely to be called as a witness and that none had to withdraw from the case.

■ On July 29, 1982, eleven days before his case was scheduled to go to trial, defendant moved to withdraw his plea of not guilty and to enter a plea of *nolo contendere* to the manslaughter charge. Before accepting defendant's new plea, the Superior Court justice conducted a thorough hearing pursuant to M.R.Crim.P. 11. In the Rule 11 proceeding, defendant told the justice that he understood the consequences of his plea, knew what rights he was giving up, and was changing his plea of his own free will. He stated that he believed the State had sufficient evidence to convict him, should the matter go to trial. He said that no one had pressured him to change his plea and that he was satisfied with the advice his lawyers had given him. Also, attorney Lipman, who represented defendant at the Rule 11 proceeding, told the justice that his client's plea was voluntary and that the *nolo* plea was in Pokorny's best interest. The State's and the defendant's attorneys then outlined their joint sentencing recommendation. They asked that defendant be given a sentence of two years at the Maine Correctional Center, with all but 30 to 120 days suspended.[2] Defendant told the court that he understood the terms of the recommended sentence, and the justice

1. Although the State's motion characterized the problem of Katz's possible role as a witness as a "conflict of interest," the rule preventing attorneys from acting as witnesses on behalf of their clients is not based on conflict of interest concerns, as a lawyer/witness testifying favorably to his client has no divided loyalty. Rather, a problem can arise because a jury, knowing that the witness is defendant's lawyer, may evaluate his testimony differently from the testimony of other witnesses. "The client could be injured because the finder of fact might unduly discount the attorney's testimony given his relationship with his client. Alternatively, the opposing client could be injured because the finder of fact, particularly a jury, might place undue weight on the testimony of an officer of the court." Note, *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1290 (1981).

2. The State wanted defendant to serve 120 days, while the defense urged that all but 30 days of the sentence be suspended.

continued the case for sentencing until August 23.[3]

On August 17, 1982, Bret Pokorny moved to withdraw his plea of *nolo contendere*.[4] Pokorny's motion was accompanied by his affidavit stating, "The deal the law firm made for me caught me off guard." Pokorny's affidavit also contained the following paragraph:

> There were some accusations made against my attorney and shortly before the trial he became a potential witness and had to withdraw from representing me at the trial. Someone from the same law firm was able to keep my case. By making this deal nothing would be said about the law firm. These accusations may have played an important part in the law firm's decision to make a deal for me.

Defendant appeared once again in Superior Court—with his new counsel—on August 23 and 24, 1982. Testimony was heard from defendant, his parents, his fiancee, and attorneys Katz and Lipman. On August 27, 1982, the court denied Pokorny's motion to withdraw his *nolo* plea, finding that "defendant worked unusually closely with his attorney and developed a substantial understanding of the factual and legal issues in the case"; that defendant was presented with a plea bargain offer on the morning of July 29, 1982; that he initially rejected the proposal but then accepted it during a late morning meeting with his parents, his fiancee, and attorneys Katz and Lipman; that the attorneys explained the plea bargain to defendant during the meeting and "recommended that he seriously consider accepting" it but "did not pressure [him] or otherwise improperly influence his decision";

and that the plea was entered that afternoon "voluntarily with a full understanding of the nature of his case, the nature of the Rule 11 proceedings, the nature of the rights he was waiving and the consequences of his plea." The Superior Court justice concluded that defendant had received from his lawyers "an honest analysis of the prospects and possible consequences of trial," and that the pressures defendant was undoubtedly under, pressures "inherent in any pretrial situation," had not "compromised [his] ability to make a rational choice."

On October 6, 1982, Bret Pokorny was sentenced to two years in the Maine Correctional Center with all but 120 days of the sentence suspended. He appealed to the Law Court that same day.

### *Plea Withdrawal under Rule 32(d)*

■ A motion to withdraw a *nolo* plea, made under M.R.Crim.P. 32(d) before sentence is imposed, should be "freely allowed in the interests of justice." *State v. Boone,* 444 A.2d 438, 441 (Me.1982). Nonetheless, the decision has always been entrusted to "the sound discretion of the justice presiding." *State v. Siddall,* 103 Me. 144, 146, 68 A. 634, 635 (1907). *See also State v. Boone,* 444 A.2d at 441; *State v. Gilcott,* 420 A.2d 1238, 1239 (Me.1980); *State v. Grondin,* 284 A.2d 677, 679 (Me.1971); *State v. Wing,* 150 Me. 290, 291, 110 A.2d 597, 598 (1954). We find no abuse of discretion in the Superior Court's denial of Pokorny's motion to withdraw his *nolo* plea.

■ The record in this case fully supports the court's factual findings that Pokorny's *nolo* plea was entered intelligently and vol-

---

3. Although the Superior Court deferred sentencing until August 23, defendant's *nolo* plea was accepted on July 29, as is specifically shown on the docket. Defendant's contention that by deferring sentencing the court also deferred acceptance of the plea has no merit. The sentencing on an accepted *nolo* or guilty plea is a completely separate process from the Rule 11 proceeding, leading to accepting the

plea, in which the issue is whether the plea is voluntary. *See* M.R.Crim.P. 11(d).

4. At the same time Katz and Lipman asked to be released as attorneys for Pokorny. Two days later the court authorized their withdrawal and new defense counsel entered their appearances.

untarily, and that defendant was neither coerced nor misled by his counsel into accepting the plea bargain arrangement. A plea entered on the advice of counsel is not considered nonvoluntary or coerced where there is no showing that the advice was misleading. *State v. Gilcott,* 420 A.2d at 1240. Nothing in this record suggests that the advice offered defendant Pokorny by his retained counsel fell short in any way of what one would expect from competent lawyers of experience and integrity. Although defendant did continually assert that he was innocent of the charge against him, such an assertion is "not conclusive" even when the defendant has entered a plea of guilty. *State v. Grondin,* 284 A.2d at 679. Where, as here, defendant pleaded *nolo contendere* and thus did not explicitly admit his guilt,[5] and where he did concede that he believed the State could convict him if the case went to trial, the fact that defendant consistently insisted on his legal innocence does not require that he be permitted to withdraw his *nolo* plea and go to trial. *See State v. Boone,* 444 A.2d at 443.

### Defense Counsel's Alleged Conflict of Interest

The affidavit submitted with defendant's Rule 32(d) plea withdrawal motion raised an issue that, defendant argues, requires us to analyze this case differently from other plea withdrawal cases. The affidavit charged that defendant's attorneys had a conflict of interest when negotiating a plea bargain on defendant's behalf and discussing that bargain with him. Essentially, defendant argues that it was in the self-interest of both to avoid taking defendant's case to trial because Katz's honesty could come under attack should he testify on defendant's behalf and should the prosecution, during cross-examination, suggest that Katz knowingly took a false statement from Foster. Defendant urges us to hold that the existence of this conflict of interest rendered both defense lawyers unable to represent and assist him effectively during the plea-bargaining process; he asserts that his conviction should be vacated on the ground that he was denied his constitutional right to the effective assistance of counsel.

There are situations in which a conflict of interest on the part of defendant's trial counsel requires the appellate court to overturn that defendant's conviction on direct appeal. In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the United States Supreme Court vacated a conviction obtained after a jury trial during which Holloway and two co-defendants were represented by a single, court-appointed lawyer. *Holloway* was, however, a particularly egregious case: The defense attorney and his clients had moved more than once for the appointment of separate counsel for the three defendants, but the trial judge had refused "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." 435 U.S. at 484, 98 S.Ct. at 1178. Noting that multiple representation of criminal defendants, inherently, is extraordinarily likely to disadvantage one or more of the defendants,[6] the Court held that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic." 435 U.S. at 488, 98 S.Ct. at 1181.

Citing *Holloway,* this court recently overturned a criminal conviction on similar facts. *State v. Weese,* 424 A.2d 705 (Me. 1981), involved two defendants, father and

---

**5.** "Implicit in the *nolo contendere* cases is a recognition that the Constitution does not ban the imposition of a sentence upon an accused who is unwilling to expressly admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."

*North Carolina v. Alford,* 400 U.S. 25, 36, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970).

**6.** 435 U.S. at 489–90, 98 S.Ct. at 1181–82. *See also* Note, *supra* note 1, 94 Harv.L.Rev. at 1380–84.

son, represented by a single attorney. We held that although joint representation does not automatically violate the sixth and fourteenth amendments to the United States Constitution,

> [w]here one of two or more criminal defendants represented by the same attorney raises the issue of a conflict of interest between the defendants, the trial justice must inquire into whether the defendant can be represented effectively by existing counsel; if the judge fails to make such an inquiry, the objecting defendant will be held to have been denied his sixth amendment right to the effective assistance of counsel without need for him to show that he was prejudiced by the multiple representation.

424 A.2d at 710. Under *Holloway* and *Weese,* then, a defendant's criminal conviction should be overturned if (1) his lawyer represented one or more co-defendants in addition to the appellant; (2) before the appellant was found guilty, the issue of the lawyer's conflict of interest was brought to the trial judge's attention or was so obvious [7] that the judge should have noticed it on his own; and (3) the trial judge failed to make any inquiry into the extent or degree of the conflict.

The case at bar presents none of these factors. The dangers inherent in the conflict that Pokorny claims his attorneys had at the time he entered his *nolo* plea are much more remote than the perils of joint representation of criminal defendants. Pokorny never raised the conflict issue until after his *nolo contendere* plea had been accepted. Previously, the trial justice, after being put on notice—by the prosecution—of the facts giving rise to the conflict, had held a hearing on the issue, after which he

determined that there was no need for the law firm retained by Pokorny to withdraw from his defense.[8] And, most devastating of all to Pokorny's claim on appeal, he clearly stated to the trial court his desire to retain that firm as counsel, even after, as the trial justice ascertained, Pokorny fully understood the possible conflict faced by members of that firm. "A defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests." *Holloway,* 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5. That is exactly what defendant Bret Pokorny did here.

■ The case at bar is governed not by *Holloway* and *Weese,* but by *Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). In *Dukes,* the defendant pleaded guilty to charges of larceny and drug possession on the advice of his attorney. On the day the guilty plea was entered, Dukes told the trial court that he was satisfied with the services of his lawyer. After his plea had been accepted but before he had been sentenced, he attempted unsuccessfully to withdraw the plea. Dukes's claim was that his lawyer had had a conflict of interest while negotiating the plea, in that the lawyer also represented "two girls" who had been charged, along with the defendant, in an unrelated false pretenses case. The plea bargain that the defendant's lawyer struck with the prosecution on the defendant's behalf involved the prosecution's dropping the false pretenses charge against the defendant. But the lawyer, while later representing the two girls in that case, "made statements putting the blame on [Dukes] for the girls' plight." 406 U.S. at 254, 92 S.Ct. at 1553. The Connecticut Supreme Court affirmed Dukes's conviction on direct appeal, *State v. Dukes,* 157

---

7. In *Weese,* the case "presented special circumstances that should have put the trial judge on notice of a conflict of interest" between the jointly represented defendants. 424 A.2d at 710.

8. The two "conflict of interest" hearings were held at a time when all parties apparently expected the case to go to trial. Nonetheless, the court and counsel must have been aware even then of the range of problems that could be presented by the facts disclosed at those hearings.

Conn. 498, 255 A.2d 614 (1969), and denied Dukes any relief in a state habeas corpus action, 161 Conn. 337, 344, 288 A.2d 58, 62 (1971), holding that "there is nothing in the record before us which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent." The Supreme Court quoted extensively from the Connecticut habeas opinion, 406 U.S. at 256–57, 92 S.Ct. at 1555, stating, "We fully agree with this reasoning and conclusion of the Connecticut Supreme Court." *Id. Dukes,* which is still good law,[9] thus stands for the proposition that an attorney's alleged conflict of interest when representing a criminal defendant during plea bargaining does not undermine his client's conviction where the defendant failed to raise the issue prior to making his plea and fails to prove that the alleged conflict in fact resulted in the attorney's inability to assist his client effectively and therefore rendered the plea involuntary, unintelligent, or coerced. *See also United States v. Laura,* 667 F.2d 365 (3d Cir.1981); *United States v. Mari,* 526 F.2d 117 (2d Cir.1975), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976).

■ In the case at bar, the Superior Court justice found as fact that Bret Pokorny entered his *nolo* plea knowingly and voluntarily, that his lawyers fully and honestly discussed with him the advantages and disadvantages of the plea, and that they did not exert any undue pressure on him to enter into a plea bargain with the prosecution. We note also that the justice presiding over the Rule 32(d) hearing was the very same justice who conducted all the relevant hearings in this case, namely, the

two "conflict of interest" hearings and the Rule 11 proceeding at which defendant's *nolo* plea was accepted. That justice understood fully the possibility of a conflict raised by defendant's affidavit and therefore in the circumstances he certainly scrutinized the voluntariness of defendant's plea and the adequacy of the legal assistance he had received during the plea bargaining with an even sharper eye than usual. Since the record in this case amply supports the Superior Court's conclusion, arrived at after careful investigation, that Pokorny's plea was not in fact tainted by any shortcomings in his lawyers' performance, defendant's bare suggestion that those lawyers might have had a motive to prefer that he enter a *nolo* plea, rather than go to trial, provides no justification whatever for us to vacate his conviction.

The entry is:

Judgment affirmed.

All concurring.

---

**9.** *Dukes* was quoted approvingly by the Court in the recent case of *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980), which held that a conviction obtained after a guilty plea need not be overturned because the defendant's lawyer also represented his two co-defendants, where the defendant raised no objection until after the plea was accepted and failed to "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718. "We hold," wrote the Court, "that the possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. at 1719.