Grafton
No. 84-155
No. 85-048

### THE STATE OF NEW HAMPSHIRE

v.

### DAVID GUARALDI

October 24, 1985

*Stephen E. Merrill*, attorney general (*Amy L. Ignatius*, assistant attorney general, on the briefs and orally), for the State.

*Marsh & Segal*, of Concord (*Ronald Ian Segal* and *Peter Karl Marsh* on the briefs, and *Mr. Segal* orally), for the defendant.

BATCHELDER, J.   The defendant, David Guaraldi, was convicted on two charges of aggravated felonious sexual assault, RSA 632-A:2, X (Supp. 1981), after a jury trial in Superior Court (*Johnson*, J.). Thereafter, the defendant unsuccessfully appealed both convictions on the grounds of inadequate jury instructions and denial of effective assistance of counsel. *State v. Guaraldi*, 124 N.H. 93, 467 A.2d 233 (1983). The defendant later appealed the trial court's denial of two subsequent motions for a new trial, and the two appeals were consolidated for oral argument and decision. We affirm.

In the first appeal, the defendant asserts that the State failed to take reasonable steps to locate a defense witness pursuant to court order, thereby infringing the defendant's constitutional right to fully present his case. In the second appeal, the defendant asserts that he was deprived of effective assistance of counsel because in a related prosecution his trial counsel also represented Thomas Guaraldi, a fellow employee and close friend who was also indicted on charges of aggravated felonious sexual assault involving the same retarded youth and whose surname the defendant had legally

assumed. For the reasons set forth below, we affirm both decisions of the trial court.

## I. *Failure To Locate Witness*

In November, 1981, approximately six months before trial, the defendant moved to depose Edward Gaedtke who, according to the defendant, might have provided exculpatory evidence. The potential evidence allegedly related to a defense of extortion and fabrication of evidence. One month before trial, after failed attempts to locate Gaedtke, the defendant moved for a continuance or an order compelling the State to produce Gaedtke. After a hearing on April 1, 1982 (the trial was set for April 13th), the court refused to compel the State to produce the witness, but did order the State "to take reasonable steps, through State and local police and through the FBI, to attempt to locate Mr. Gaedtke and inform defense counsel of their efforts and the results."

In response to the order, the prosecutor, assistant attorney general Martha V. Gordon, asked Captain Robert Barry of the Nashua Police Department and Corporal Clayton Young of the New Hampshire State Police to locate Gaedtke. In particular, the prosecutor requested the State police to issue an "all points bulletin." The Nashua Police Department's investigation disclosed that Gaedtke had left the State and was possibly en route to Las Vegas. These police efforts were unsuccessful, and Gaedtke was not present at the trial.

The State did not contact the FBI, due to the prosecutor's belief that since no federal charge was involved, no federal assistance would be forthcoming. Further, the State did not contact the Veterans' Administration (VA), despite the prosecutor's knowledge that Gaedtke was receiving hospital treatment and benefits. The prosecutor determined that use of the two police agencies was the best way to comply with the trial court order to locate the witness.

Several months after the trial, the State produced Gaedtke to testify as a government witness in a murder prosecution. In that instance, the prosecutor contacted Sergeant Roland Lamy of the New Hampshire State Police, who through investigation located Gaedtke. Later, in January, 1984, a private investigator hired by the defendant was able to locate Gaedtke in two days at his Massachusetts residence.

The defendant argues that the State failed to take "reasonable steps" to produce Gaedtke at the trial. In particular, the defendant asserts that the State did not pursue all reasonable methods at its disposal to locate Gaedtke (*i.e.*, the FBI and VA), and that when the

witness was needed for the government's purposes he was located, but when he was sought as a defense witness he was conveniently unavailable. Further, the defendant argues that his fundamental right to fully defend himself through the development of evidence was denied, violating traditional notions of fairness and due process of law under the New Hampshire and United States Constitutions.

The first issue on appeal is whether the State's efforts to comply with the trial court's order were reasonable. The defendant asserts that because reasonable steps were not taken, the testimony of an essential witness was lost, thereby necessitating a new trial.

We agree with the trial court that reasonable steps were taken by the State. The prosecutor contacted both State and local police officials before the trial. Although the investigations undertaken by both police agencies were not fruitful, this cannot be blamed on the State. The State was not ordered to produce the witness, as the defendant originally requested, but merely to take "reasonable steps" to locate the witness. The fact that the State was able to locate Gaedtke to testify as a prosecution witness at a later trial does not *per se* indicate that the prior effort was inadequate. The prosecutor stated that the same steps were taken in both instances.

The defendant raises the compulsory process issue, citing part I, article 15 of the New Hampshire Constitution ("every subject shall have a right to produce all proofs that may be favorable to himself ... and to be fully heard in his defense"), and the sixth amendment of the United States Constitution, in particular the compulsory process clause ("the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor"). The defendant relies in part on *Washington v. Texas*, 388 U.S. 14, 19 (1967), a leading case which explicates the compulsory process clause:

> "[t]he right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense."

We agree with the constitutional principles as enunciated in *Washington*, yet we cannot agree with the defendant's reliance on these principles in the instant case. The defendant was not inhibited by the State in presenting his case, and the State did take reasonable steps to assist in procuring the witness's appearance. It is impor-

tant that the trial court, after a hearing on the materiality of Gaedtke's potential testimony, decided not to order the State to produce the witness, but rather ordered the State to take reasonable steps to locate the witness. Therefore, the defendant's right "to present his own witnesses to establish a defense" was not infringed.

The State and the defendant offer opposing views on the materiality of Gaedtke's potential testimony. The defendant asserts that Gaedtke would testify about an alleged extortion, thereby exculpating the defendant. The State asserts that if Gaedtke testified he would probably invoke his fifth amendment right against self-incrimination. Further, the State asserts that Gaedtke could provide additional evidence of guilt because of his knowledge of the defendant, the victims, and the alleged homosexuality of the defendant. Thus it is unclear whether the potential evidence would ever be given, and whether, if it was given, it would help the defendant's case.

■ New Hampshire law provides that a new trial may be ordered when the defendant can establish that "through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." RSA 526:1. "The granting of a motion for a new trial, after notice and an opportunity to be heard, is within the discretion of the court and will be upheld absent an abuse of discretion (citation omitted)." *Armstrong v. Armstrong*, 123 N.H. 291, 293, 461 A.2d 103, 104 (1983).

■ After a review of the record we find that the trial court did not abuse its discretion and that the State did take reasonable steps to locate the witness. We conclude, therefore, that the trial court was correct in denying defendant's motion for a new trial based on the State's failure to produce a witness, and we affirm.

## II. *Dual Representation*

The second issue on appeal is whether the defendant was deprived of his constitutional right to the effective assistance of counsel. The defendant argues that a conflict of interest existed at the time of trial because defense counsel also represented Thomas Guaraldi, a fellow employee and close friend of David Guaraldi, in a related criminal case. Further, the defendant argues that the dual representation compromised counsel's duty of undivided loyalty; that the court's failure to address David Guaraldi on the record concerning the potential conflict of interest, and to obtain a waiver from him, was reversible error; and that the conflict deprived him of the effective assistance of counsel. The State counters that there was no actual conflict, and that the potential conflict was adequately

addressed early in the proceedings and waived by the defendant.

The facts relevant to this part of the appeal follow. David Guaraldi and Thomas Guaraldi were both indicted on charges of aggravated felonious sexual assault. RSA 632-A:2, X (Supp. 1981). Thomas Guaraldi retained attorney Peter Heed to represent him at the arraignment. David Guaraldi, who did not then have independent counsel, was also represented at the arraignment by Heed. Attorney Heed stated, however, that his policy was not to represent co-defendants, and that he would not represent David Guaraldi after the arraignment. Heed also stated that, at the stage of the defense in which he was involved, there was no actual conflict because the Guaraldis were not going to assert antagonistic defenses.

Leonard Guaraldi, Thomas's father, retained a Boston attorney, James Sullivan, to represent both Thomas and David. Sullivan was joined in the defense by Kenneth Ryan, a Merrimack, New Hampshire, attorney. Sullivan recalled discussing the issue of conflict with the Guaraldis and with the trial judge. Sullivan stated that the two defendants insisted that their defenses were not antagonistic; both maintained their innocence and said they would never testify against each other.

David Guaraldi, represented by Sullivan and Ryan, was tried first and convicted. He objected to tactical decisions made by counsel, in particular the failure to call Thomas Guaraldi or fellow employee Linda Fisher to testify. The reason trial counsel did not call these potential witnesses was to prevent any evidence of the suspected homosexual relationship of David and Thomas Guaraldi from being entered and damaging David's defense.

After David's conviction, and before Thomas's trial, attorneys Sullivan and Ryan withdrew. Leonard Guaraldi, who was paying all legal fees, retained Alfred Farese and Ronald Segal of Everett, Massachusetts, and Peter Marsh, of Concord, as the new defense counsel. This latter defense team represented Thomas at his trial (which was later declared a mistrial and in which a *nolle prosequi* was entered), and attorneys Segal and Marsh represent David on appeal.

The trial court, at defendant's sentencing hearing, requested David Guaraldi to prepare an affidavit stating that he was aware of the potential conflict of interest, that he had discussed the possible ramifications of common representation with his attorneys, and that he was satisfied with his counsel.

After conviction, sentencing, and an unsuccessful appeal, the defendant moved for a new trial based on ineffective assistance of counsel. At the motion hearing on September 28, 1984, the trial judge stated that he had been concerned about the potential conflict

from "day one," and had discussed the conflict issue with defense counsel. The defendant appeals the trial court's denial of that motion.

The issue on appeal is whether dual representation deprived the defendant of effective assistance of counsel. The defendant argues that the trial court's failure to question the defendant on the record about the conflict of interest and to advise him of the pitfalls of joint representation amounted to the deprivation of the defendant's right to effective assistance of counsel. The State maintains that although no on-the-record colloquy between the judge and the defendant occurred, the defendant did receive adequate warning of the conflict and waived it. The State also argues that although a potential conflict existed, no actual conflict ever arose.

■■ The New Hampshire Constitution guarantees to all litigants the effective assistance of counsel. N.H. CONST. pt. 1, arts. 12 and 15; *Abbott v. Potter*, 125 N.H. 257, 259, 480 A.2d 118, 119 (1984); *Smith v. State*, 118 N.H. 764, 770, 394 A.2d 834, 839 (1978). The State Constitution does not proscribe joint representation, but requires trial counsel and the court to ensure that criminal defendants receive effective legal representation. We recently addressed the issue of multiple representation in *Hopps v. State Board of Parole & a.*, 127 N.H. 133, 500 A.2d 355 (1985) ("special rules apply when such a claim is predicated on a conflict of interest arising from one lawyer's simultaneous representation of more than one defendant").

■ In *Abbott*, we held that the test "to measure the effective assistance of counsel, as against claims of conflict of interest, in the context of multiple representation" is whether an actual, as opposed to a potential, conflict of interest adversely affected trial counsel's representation. *Abbott, supra* at 259–60, 480 A.2d at 119 (emphasis omitted). The United States Supreme Court, in addressing this issue, stated: "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980).

In *Hopps supra*, we stated:

> "The United States Court of Appeals for the First Circuit has explained that relief under the rule in *Cuyler* requires proof of two elements: (a) some plausible alternative defense strategy or tactic that trial counsel might have pursued; and (b) an inherent conflict between that alternative defense and other demands and interests arising from counsel's representation of another person."

*Hopps, supra* at 136, 500 A.2d at 356–57 (citing *Brien v. United States*, 695 F.2d 10, 15 (1st Cir. 1982)).

The defendant argues that an actual conflict of interest existed by virtue of trial counsel's joint representation of himself and Thomas Guaraldi. As an example of the conflict, he claims that counsel refused to call Thomas to testify, and that Thomas could have corroborated his version of the facts. Counsel did not call Thomas to testify at David's trial, however, to avoid the entry of damaging evidence and because Thomas's trial was pending. Moreover, because the two Guaraldis maintained their innocence throughout the proceedings and declared they would never testify against each other, we cannot say that defense counsel had available some plausible alternative defense strategy. The argument that calling Thomas to testify was a plausible alternative defense tactic is not persuasive because Thomas's testimony in all probability would have undermined David's defense of innocence by raising inferences of a homosexual relationship between the two Guaraldis. Further, Thomas had available the fifth amendment privilege against self-incrimination, so the extent of his testimony might have been limited.

■ Even if there was an actual conflict, the State argues that the defendant waived the conflict by asserting that there were no antagonistic defenses between David and Thomas, and by failing to retain separate counsel. This assertion is supported by the record, which discloses that as early as September, 1981, defense counsel Sullivan discussed the conflict with David Guaraldi. The failure to seek separate representation was an implicit waiver of the right to later object to dual representation.

The defendant argues that despite the court's and counsel's awareness early in the case of a potential conflict, the defendant was never asked on the record whether he understood the significance of the conflict and wished to waive his right to have other counsel. He states that the modern rule in criminal practice requires the court to "promptly inquire with respect to such joint representation and . . . personally advise each defendant of his right to the effective assistance of counsel, including separate representation." FED. R. CRIM. P. 44(c). *See United States v. Lawriw,* 568 F.2d 98 (8th Cir. 1977), *cert. denied,* 435 U.S. 969 (1978); *United States v. Carrigan,* 543 F.2d 1053 (2d Cir. 1976). The defendant also argues that recent State court decisions follow this practice. *See, e.g., State v. Porkorny,* 458 A.2d 1212 (Me. 1983); *People v. Gomberg,* 38 N.Y.2d 307, 342 N.E.2d 550 (1975).

■ We agree with the defendant that the rule requiring the court to engage the defendant in an on-the-record discussion con-

cerning potential and actual conflicts created by multiple representation has merit, but we refuse to adopt this requirement retrospectively. As we recently stated:

> "In the exercise of our supervisory jurisdiction, therefore, we will require in all future criminal cases involving multiple representation that both counsel and the trial court be responsible for making a record indicating that counsel has investigated the possibility of conflict of interest, has discussed the possibility with each client, and has determined that conflict is highly unlikely. Similarly counsel and the court will be responsible for making a record of each client's informed consent to dual representation; that consent must rest on the client's understanding that he is entitled to counsel representing him alone. The trial court should address the issue on the record as early in the proceedings as is practicable, and must refuse to allow dual representation unless the record indicates convincingly that the potential for conflict is very slight. While this may not be our last word on this subject, we would wish to assess experience under this procedure before we would consider a rule that would flatly preclude dual representation or one that would shift the burden of proof when a conviction is attacked collaterally on grounds of conflict. Cf. *United States v. Foster*, 469 F.2d 1 (1st Cir. 1972)."

*Hopps*, 127 N.H. at 140, 500 A.2d at 359. The *Hopps* decision is prospective and creates new responsibilities for the trial court. We cannot say that the trial court here committed reversible error by not anticipating the dictates of *Hopps*.

On the facts of this case, the absence of an on-the-record colloquy with David Guaraldi does not prevent the waiver of the alleged conflict from being effective, thus requiring a new trial. The conflict issue was raised at the arraignment, and was discussed with the defendant by counsel. The record discloses that the conflict issue was brought to the defendant's attention early in the case. Moreover, the decision of the defendant and Thomas Guaraldi not to retain separate representation, after being informed of the potential conflict by counsel, is an effective waiver. Defense counsel has not persuaded us that David Guaraldi was denied effective assistance of counsel under the State or Federal Constitutions.

The decision of the trial court denying the defendant's motion for a new trial based on ineffective assistance of counsel is affirmed.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.