David A. GUARALDI,
Plaintiff, Appellant,

v.

Michael CUNNINGHAM, Warden, New Hampshire State Prison,
Defendant, Appellee.

No. 86–1895.

United States Court of Appeals,
First Circuit.

Argued Feb. 2, 1987.

Decided May 29, 1987.

---

Ronald I. Segal, Concord, N.H., for plaintiff, appellant.

Andrew W. Serell, Criminal Justice Bureau, with whom Stephen E. Merrill, Atty. Gen., Concord, N.H., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellant, David Guaraldi, an assistant director of a foster home, was convicted in a New Hampshire court of sexually assaulting a fifteen-year-old boy in his care. The convictions were based on two sexual incidents, which the state alleged took place on or about February 15 and May 20, 1981. David Guaraldi has come to federal court seeking a writ of habeas corpus. He says that certain circumstances of his state trial violated the federal Constitution. The federal district court found no constitutional defect and denied his request for the writ. We affirm.

I

David Guaraldi's first constitutional claim is that he was denied effective assist-

ance of counsel because his trial counsel had a conflict of interest. David Guaraldi's trial counsel also represented Thomas Guaraldi, David's foster brother, who was the director of the foster home. Thomas Guaraldi was accused of unlawful sexual acts with the same fifteen-year-old boy and with that boy's brother. Thomas was tried separately; his case ended in a mistrial, and the state declined to retry him. David says that this dual representation by trial counsel created an actual conflict of interest—a conflict that prevented counsel from representing David to the best of his ability. David adds that, in any event, the trial judge should have explained to him the potential for a conflict of interest that inhered in the dual representation. We disagree.

The Supreme Court has held that,

[i]n order to establish a violation of the Sixth Amendment, a defendant [like David] who raised no objection [to dual representation] at trial must demonstrate that an *actual conflict of interest* adversely affected his lawyer's performance.

*Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (emphasis added). This circuit has said that, to prove such an actual conflict of interest, David must show that there was some "plausible alternative defense strategy or tactic" that might have been pursued, an alternative strategy that "was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985) (citing *Brien v. United States*, 695 F.2d 10, 15 (1st Cir.1982)). David alleges three such forgone defense strategies. He says that, in the absence of dual representation, (1) he might have bargained with the state for leniency in return for testimony against Thomas; (2) trial counsel might have called Thomas to testify at David's trial; and (3) trial counsel might have called Linda Fisher as a witness on David's behalf. After examining the record, we conclude that these forgone strategies demonstrate no actual conflict.

■ David's claim that trial counsel's conflict of interest led David to give up an opportunity to testify against his brother in exchange for leniency is not plausible. At the time of David's sentencing, when new counsel had joined the case, David *again* rebuffed the state's offer of leniency in exchange for testimony against Thomas. The next month, David filed an affidavit stating:

I shall not, at any time, consider becoming[ ] a witness for the State against Thomas Guaraldi at his forthcoming trial.

Affidavit of David Guaraldi, Notice of Appeal at 31, *State v. Guaraldi*, 127 N.H. 303, 500 A.2d 360 (1985). David also said in this affidavit that he saw no conflict of interest in the continued dual representation of both Guaraldis by (new) counsel. *Id.* In addition, at a later state court hearing on the dual representation problem, David told the court that he had rejected the state's offer of leniency in exchange for testimony against Thomas because he and Thomas were both innocent. He said, "I didn't want to have anything to do with [the state's offer] because I had nothing for [the prosecutors]." Record on Motion for New Trial, Vol. II, at 136, *State v. Guaraldi*, No. S–81–191–193 (N.H.Super. Ct.1984). In these circumstances, we do not believe that David has shown the state's offer to be a "plausible alternative defense strategy" that he failed to pursue because of his lawyer's conflicting loyalties.

■ Nor do we regard David's second forgone strategy—calling Thomas Guaraldi as a witness—to be a "plausible alternative." David says that Thomas, if called, would have testified that he and David met with the two alleged victims in the office of the foster home one evening in late March or early April 1981, that after that meeting the boys went to their bedrooms, and that no sexual activity took place. *Id.*, Vol. I, at 60, 65–66. Thomas would also have testified that, after learning that the boys had engaged in homosexual activity in the past, he reported this information to a state welfare officer. It is not likely, however, that this testimony would have helped David.

The acts that underlay the charges against David took place in February and May 1981, not late March or early April. Testimony that a March or April meeting with the alleged victims ended innocently would not likely have swayed the jury's assessment of earlier and later events. In fact, although David himself testified about this meeting, which he said took place in early April, trial counsel never mentioned it in closing argument. Record, Vol. II, at 201, Vol. III, at 339–69, *State v. Guaraldi*, No. S–81–191–193 (N.H.Super.Ct.1982). Nor would testimony about Thomas's discussion with the welfare officer have had much probative force with respect to *David's* guilt. We therefore do not think that calling Thomas as a witness amounted to a "viable" trial strategy.

◼ David alleges as a third forgone strategy his failure to call Linda Fisher, an employee of the Guaraldis' foster home, as a witness. He says that Fisher would have testified that she was present in late March or early April 1981 when David and Thomas called the two boys into their office for a meeting and that, after the meeting, the boys returned upstairs to their bedroom. She also would have offered testimony about a Valentine's Day "love poem" written by David to one of the boys and introduced against David at trial. Fisher would have said that David had made no secret of the poem and had in fact asked Fisher to type it for him. We do not believe that this testimony would have helped David. Again, testimony about a late March or early April meeting would show little about facts alleged to occur in February and May. And, the only significance that the state, at trial, attached to the Valentine's Day poem was that it helped set the date of the first sexual incident. Indeed, the state never challenged David's own testimony that he asked Fisher to type the poem and that he placed a copy of the poem in the foster home's files. David's openness about the poem in any case says little about whether the offenses took place. Thus, David has failed to show that calling Fisher to testify was a "viable" alternative trial strategy.

None of the three alleged forgone strategies, in our view, supports a claim that trial counsel's dual representation "adversely affected his ... performance." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718.

Appellant raises a different but related sixth amendment claim. He says that the trial court should have advised him directly on the record about the possible conflicts of interest and related dangers that can arise when a single lawyer represents two clients accused of committing related crimes. We have examined this claim in the light of *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), where the Supreme Court wrote:

> [N]othing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.... *Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.*

*Id.* at 346–47, 100 S.Ct. at 1717 (emphasis added).

◼ Appellant did not object to dual representation. We have found no "particular conflict" that existed as a result of the dual representation; thus, the trial court need not have known of one. And, we see no "special circumstances" that gave rise in this case to greater potential conflicts of interest than those that exist *whenever* a single lawyer represents two persons accused of related crimes, the very situation that *Cuyler* itself considered. We do not think, as appellant argues, that payment of counsel by Thomas Guaraldi's father represents such a special circumstance. It seems most unlikely that the elder Guaraldi

would pay David's significant legal fees and then use his influence over counsel to undermine David's case. Nor do we believe that the trial judge's off-the-record inquiries to counsel about the potential for conflict of interest show a "special circumstance"; these inquiries (and the subsequent communications between David and his counsel) simply show that the district judge may have done more than *Cuyler* says is constitutionally necessary.

Because we have found no actual conflict of interest that affected appellant's trial, and because the Constitution did not require the state trial court to warn appellant on the record about the risks of dual representation, we find no violation of David Guaraldi's sixth amendment rights.

## II

■ Appellant makes a second claim in his petition for a writ of habeas corpus. He says that the state of New Hampshire violated his right to compulsory process by failing to locate Edward Gaedtke, apparently a frequent visitor at the foster home whom appellant wished to call as a witness. The trial court ordered the state to help find Gaedtke. The state failed to locate him, but the New Hampshire Supreme Court found that the state had not violated the trial court's order. *State v. Guaraldi,* 127 N.H. 303, 306, 500 A.2d 360 (1985). Nor did the state's failure to find Gaedtke violate the Constitution. Gaedtke was not a state inmate, a government informant, a state official, or otherwise within the state's control; and the state had not made Gaedtke unavailable. Absent any such special circumstance, no case that we have found requires the state to produce a defense witness. *See United States v. Ballesteros-Acuna,* 527 F.2d 928, 930 (9th Cir. 1975); *United States v. Edwards,* 366 F.2d 853, 870–71 (2d Cir.1966). And, in any event, appellant has not explained how his failure to obtain testimony from Gaedtke materially prejudiced his case. *See Ashley v. Wainwright,* 639 F.2d 258, 260 & n. 4 (5th Cir.1981) (holding that a habeas petitioner who claims a violation of his right to compulsory process must "show a colorable

need for the witness' testimony"); *see also Vitello v. Gaughan,* 544 F.2d 17, 18 (1st Cir.1976) ("[E]ven a constitutional violation will not call for habeas corpus relief where the petitioner was not harmed by the error.").

For these reasons, the judgment of the district court is

*Affirmed.*